J-S31017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.N.S. A/K/A J.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.W., FATHER | : : : : : : : | No. 64 EDA 2018 |

Appeal from the Decree Dated November 29, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-001459-2015,
CP-51-AP-0000072-2017, CP-51-DP-0001716-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED JUNE 05, 2018**

D.W. (Father) appeals from the trial court's decree involuntarily terminating his parental rights to his minor daughter, J.S. (born 7/08).  After careful review, we affirm.

The Department of Human Services (DHS) first became aware of J.S. on June 8, 2015, when it received a general protective services report alleging that Mother[1] was unstable and abused drugs and alcohol.  Mother had an informal agreement with a family friend to care for J.S. during the week.  On June 22, 2015, the family friend called DHS and asked that J.S. be removed from her house.  DHS obtained an order of protective custody (OPC) for J.S.

_____

[1] Mother's parental rights were also involuntarily terminated by decree on November 29, 2017.  She currently has a separate appeal pending in this Court. ***See In the Interest of J.N.S.***, 80 EDA 2018.

After a shelter care hearing, the OPC was lifted and temporary legal custody of J.S. was transferred to DHS. J.S. was adjudicated dependent on July 24, 2015, and placed in foster care.

In February 2017, paternity tests confirmed that Father was the biological father of J.S.[2] Father was permitted to have bi-weekly line of sight/hearing visits with J.S. The following parental objectives were set forth for Father: (1) contact the Community Umbrella Agency (CUA) and provide a working phone number and address; (2) attend an assessment; (3) follow all recommendations resulting from the assessment; (4) complete random drug screens; (5) attend addiction treatment and comply with all recommendations; (6) maintain gainful employment and verify income; (7) sign all necessary releases; and (8) be available for visitation on scheduled dates and times. In April 2017, Father tested positive for cannabis; Father, however, continued to participate in out-patient drug and alcohol treatment, as well as attend therapy for a diagnosed depressive disorder. In May 2017, Father's visits were revised to weekly, supervised visits at the agency. Father tested positive for cannabis again in May, June, August, October, and November 2017.

On November 9, 2017, DHS filed a petition to change the goal to adoption and to terminate Father's parental rights to J.S. On November 29, 2017, the trial court held a goal change/termination hearing. At the hearing,

_____

[2] A different individual was listed as J.S.'s biological father on her birth certificate.

CUA case manager, Kyrie McChristian, testified that Father had completed all four of his service goals, including housing, drug and alcohol counseling, a fatherhood program, and financial counseling. N.T. Termination Hearing, 11/19/17, at 17. McChristian also testified that Father participates in drug and alcohol treatment programs. However, McChristian stated that Father has been inconsistent with visiting J.S. and that Father and J.S.'s relationship, from what he has observed during visits, can be classified as a friendship rather than a parent-child connection. *Id.* at 21. McChristian testified that J.S. addresses her foster parent as "mom," that foster parent meets J.S.'s needs, and that there is a parent-child bond between them. *Id.* at 22. Finally, McChristian testified that the goal should be changed to adoption and that J.S. would not suffer any irreparable harm if Father's parental rights were terminated. *Id.* at 25.

Father testified that he voluntarily attended outpatient drug therapy three days a week beginning in 2016. *Id.* at 40. Father admitted that he has relapsed with his drug use, having tested positive for cannabis consistently prior to permanency hearings. Father testified that he uses drugs as a coping mechanism to deal with the loss of his younger brother, who passed away in March 2016. *Id.* Finally, Father testified that during his visits with J.S. they do her homework, play, and talk about what is going on in her life. *Id.* at 43.

Following the hearing, the court changed the goal to adoption and terminated Father's parental rights based on sections 2511(a)(1),[3] (a)(2)[4] & (b) of the Adoption Act.[5] Father filed a timely appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors raised on appeal. Father presents the following issues for our consideration:

> (1) Did the court err or abuse its discretion when terminating Father's parental rights under § 2511(a) when Father has completed most of his plan objectives, and [by] terminating Father's parental rights on non[-]competent or insufficient evidence?
>
> (2) Did the court err or abuse its discretion when terminating Father's parental rights under § 2511(b) irregardless [sic] of Child's legal interests, and therefore, terminating Father's parental rights on non[-]competent or insufficient evidence?

---

[3] Under section 2511(a)(1), a parent's rights may be terminated based upon:

> The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

[4] Under section 2511(a)(2), a parent's rights may be terminated based upon:

> The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

[5] 23 Pa.C.S. §§ 2101-2910.

- 4 -

(3)     Did the court err or abuse its discretion when changing the goal to adoption when Father has completed most of his plan objectives?

Appellant's Brief, at 6.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Instantly, the trial court found that "Father's testimony focused primarily on himself and treating his addiction and mental health issues, [but had] not focused on what was best for [J.S.]." Trial Court Opinion, 2/15/18, at 22. While the court noted that Father had completed many of his service objectives, it also found that Father was "inconsistent with [his] visits" with J.S. and, most critically, had relapsed with his drug use. *Id.* at 23. Under these circumstances, the court concluded that termination was proper under

section 2511(a)(1), where Father "revealed a settled purpose of relinquishing parental claim to [J.S.] . . . and had failed to perform parental duties." *Id.* The court also did not believe that Father would ever be able to fulfill his parental responsibilities in the future. *Id.*

After a review of the record, we agree with the court's findings where CYS proved that termination was warranted, under sections 2511(a)(1) and (a)(2), by clear and convincing evidence. *In re Adoption of S.M.*, *supra*. Although Father has been relatively compliant with his service plan objectives, he has been unable to cease using drugs which prevents him from performing his parental duties and which also demonstrates his refusal to remedy conditions that cause J.S. to be without essential parental care, control or subsistence necessary for her well-being. 23 Pa.C.S. § 2511(a)(2).

With regard to section 2511(b), the trial court found that termination of Father's parental rights would be in J.S.'s best interests and would not irreparably harm her where there was testimony that: J.S. was not bonded to Father; their relationship was more of a friendship; J.S. never asks for Father; J.S. refers to her foster parent as "mom;" and foster parent meets J.S.'s safety, comfort and daily needs. After a review of the record we agree with that conclusion. Although Father may love J.S., the evidence does not show that there is a demonstrated parent-child bond between him and J.S. *See In re J.W.*, 578 A.2d 952, 958 (Pa. Super. 1990) (court may properly terminate bonds which may exist in form but not in substance when preservation of bond "would consign a child to an indefinite, unhappy, and

- 6 -

unstable future devoid of the irreducible minimum parental care to which that child is entitled."). Here, J.S. had been in placement for just under one-and-one-half years at the time of the termination hearing. To further prolong J.S.'s placement and retain the goal of reunification in the hopes of establishing a beneficial parent-child bond would be contrary to her needs and welfare. *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) ("Intangibles such as love, comfort, security and stability are involved in the inquiry into the needs and welfare of the child."). Moreover, J.S.'s demonstrated bond with her foster parent is a factor to be considered under section 2511(b). *In re K.Z.S.*, (Pa. Super 2008) (trial court should also examine intangibles such as love, comfort, security, and stability child might have with foster parent under section 2511(b)).[6]

Father also contends that the court erred in terminating his parental rights under section 2511(b) without evidence of J.S.'s wish to forfeit her legal interests. Specifically, he claims that J.S., who was nine years old at the

---

[6] Father cites to *In re Adoption of S.M.*, 816 A.2d 1117 (Pa. Super. 2003), to support his argument that his struggle with drugs should not justify termination. Specifically, he claims that he, like the father in *S.M.*, could overcome his drug and mental health problems and be a parent to J.S. Father, however, fails to recognize that the father in *S.M.* cared for his child, raised her and lived with her as a family unit with his paramour and child's half-siblings, and had a "strong and loving relationship" with his child, the severance of which would not have been in child's best interest. *Id.* at 1124. None of those facts, however, exists in the present case with Father and J.S.

time of the termination hearing, was not made aware of her legal interests in the matter. Father cites to *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017),[7] which addressed whether the mandate to appoint counsel for a child under 23 Pa.C.S.A. § 2313(a), in contested termination of parental rights proceedings, is satisfied by the appointment of a guardian *ad litem* (GAL), provided the GAL is an attorney. A majority of the Court concluded that counsel may serve in both capacities as long as there is no conflict between a child's legal interests and best interests. When a failure to appoint counsel under section 2313(a) occurs, it is a structural error not subject to a harmless error analysis.

Instantly, Lue Frierson, Esquire, was J.S.'s child advocate, and Faryl Bernstein acted as J.S.'s GAL at the goal change/termination hearing.[8] Father contends that on cross-examination of case manager McChristian, the trial

---

[7] In *L.B.M.*, our Supreme Court looked to the Rules of Juvenile Court Procedure for the distinction between "legal" and "best" interests.

> "Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

*L.B.M.*, 161 A.3d at 174 n.2 (quoting Pa.R.J.C.P. 1154, cmt.).

[8] On appeal, Patricia A. Korey, Esquire, GAL for J.S., joined in the brief filed by DHS.

court cut off a line of questioning regarding visitation between Father and J.S. Father asserts that visitation "is one of [J.S.'s] legal interests that can be lost after adoption occurs [and that] he has an interest and right to know whether [J.S.] was apprised of her rights and option[s]." Appellant's Brief, at 11-12.[9]

In its opinion, the trial court notes that both Ms. Bernstein and Ms. Frierson advocated for J.S. at the hearing. Moreover, the court found that J.S.'s wishes were made known through McChristian's testimony, wherein she stated J.S. wanted to remain with her foster parent and never asks questions about her biological parents. A review of the notes of testimony from the hearing supports the determination that J.S.'s needs and welfare were actively advanced, pursuant to section 2313(a), by appointed counsel Frierson and GAL Bernstein, who were present at the hearing. Thus, we find no merit to this claim on appeal.

Finally, Father contends that the trial court improperly changed the goal from reunification to adoption where he had completed most of his plan objectives. We disagree.

Here, the court found that DHS had proven by clear and convincing evidence that changing the goal to adoption would be best suited to J.S.'s

---

[9] During Father's counsel's cross-examination of McChristian, counsel asked the witness if she had ever explained to J.S. that if she were adopted she would not be able to see Father anymore. N.T. Termination Hearing, 11/29/17, at 32. The GAL objected to the relevance of the question; the court sustained the objection. *Id.* Counsel asked the question as a follow-up to his general inquiry as to whether McChristian had discussed adoption with J.S. and in relation to J.S.'s foster mom wanting to become her legal mother.

"safety, protection and physical, mental and moral welfare." 42 Pa.C.S. § 6351(g). We also agree with this decision.

In considering whether to change a goal, the trial court has a responsibility to look to the best interests of Child and not those of Child's parents. *In the Interest of R.J.T.*, 9 A.3d 1179 (Pa. 2010). To require J.S. to wait in limbo without any sense of permanency or stability until Father can completely recover from his drug abuse issues and mental health problems is simply not feasible. *See* 42 Pa.C.S. § 6351(f.2) (in considering appropriateness and feasibility of current placement goal for child, court shall consider evidence of conduct by parent that places health, safety or welfare of child at risk, including evidence of use of controlled substance that places health, safety or welfare of child at risk). It is not in J.S.'s best interests to continue to be exposed to uncertainty in her foster home in the hope that Father would attain sobriety and be able to care for her sometime in the future. *In re J.D.H.*, 171 A.3d 903, 908 (Pa. Super. 2017) ("A child's life simply cannot be put on hold in the hope that a parent will summon the ability to handle the responsibilities of parenting.") (citation omitted).

Decree affirmed.

DUBOW, J., Did not participate in the consideration or decision of this memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/18